## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SYLVANIUS O. FURLOW,  :

                    Plaintiff,

   -vs-

ERNIE MOORE, Warden

                    Defendant(s).  :

Case No. 3:06-cv-108

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought by Petitioner pursuant to 28 U.S.C. §2254 and seeking relief from his convictions and sentences for attempted murder with firearm specification, having weapons while under disability, possession of crack cocaine, and failure to comply with an order/signal from a police officer.  Mr. Furlow is acting *pro se* in this matter.

The Court notes Respondent has filed Exhibits in support of his Answer, (Doc. 6, Ex. 1-21 attached thereto)[1], and Mr. Furlow has filed Exhibits in support of his Reply. (Doc. 16, Ex. 1-25 attached thereto).  Generally, the parties have filed copies of the same exhibits and neither has made any objection to the opposing party's exhibits.  For ease of reference, except where specifically noted, the Court's references will be to the Exhibits attached to the Respondent's Answer.

---

[1] In addition, Respondent has filed an Amended Answer with copies of the transcripts of certain proceedings attached. (Doc. 11).

**Statement of Facts**

The Second District Court of Appeals for Clark County, Ohio, described the facts and circumstances leading to Mr. Furlow's indictment, pleas of no contest, convictions, and adjudged sentences as follows:

> Defendant, Sylvanius Furlow, appeals from his conviction and sentence for attempted murder, having weapons while under a disability, failure to comply with an order or signal of a police officer, and possession of crack cocaine.
>
> On January 9, 2003, near 133 W. Johnny Lytle Avenue in Springfield, Defendant shot Cedric Williams in the chest with an assault rifle. The shooting left Mr. Williams paralyzed. Defendant fled the scene in his vehicle following the shooting. When spotted by police, Defendant led police on a high speed chase toward Dayton that reached speeds in excess of one hundred miles per hour. The chase ended when Defendant ran off the road on Route 4 and crashed into a tree, injuring the passenger who was with him. Police found nearly fifteen grams of crack cocaine inside Defendant's vehicle.
>
> Defendant was indicted on one count of attempted murder, R.C. 2923.02(A)/2903.02(A), one count of having weapons while under a disability, R.C. 2923.13(A)(2), failure to comply with an order or signal from a police officer, R.C. 2921.221(B), possession of crack cocaine, R.C. 2925.11(A), and one count of felonious assault, R.C. 2903.11. A three year firearm specification, R.C. 2941.1145, was attached to all of the charges except having weapons under disability.
>
> A jury trial commenced on July 24, 2003. After a jury had been selected, and during the prosecutor's opening statement, Defendant indicated that he was willing to plead no contest to a combination of the charges in exchange for a total aggregate sentence of eighteen years. Accordingly, Defendant entered pleas of no contest to all of the charges except felonious assault, which the State dismissed. In addition, the State dismissed all of the firearm specifications except the one attached to the attempted murder charge.
>
> The trial court accepted Defendant's pleas, found him guilty, and sentenced him to concurrent prison terms of ten years on the attempted murder charge, eleven months on the weapons under disability, and eight years for possession of crack cocaine. In

> addition, the court sentenced Defendant to five years for failing to comply with an order/signal from a police officer, to be served consecutively to the other sentences. The court also imposed one additional and consecutive three year term on the firearm specification attached to the attempted murder charge. Thus, Defendant received a total aggregate sentence of eighteen years.
>
> Defendant has timely appealed to this court from his convictions and sentences.

*State v. Furlow,* No. 03CA0058, 2004 WL 2245136 (Ohio App. 2nd Dist. Sept. 3, 2004); Doc. 6, Ex. 11.

**State Court Proceedings**

In January, 2003, the Clark County, Ohio, Grand Jury indicted Mr. Furlow on one count of attempted murder, one count of having weapons while under disability, failure to comply with an order or signal from a police officer, possession of crack cocaine, and one count of felonious assault. (*Id.*, Ex. 1). A three (3) year firearm specification was attached to all of the charges except the count of having weapons while under a disability. *Id.* Initially, Ronald Morris, an attorney with the Clark County Public Defender's Office, represented Mr. Furlow. *Id.,* Ex. 2. However, in view of a claimed conflict of interest in the Public Defender's office, on March 4, 2003, the trial court granted Mr. Morris' Motion to Withdraw and appointed Cozette Snead to represent Mr. Furlow. *Id.*

On July 2, 2003, Mr. Furlow filed a *pro se* Motion to Dismiss Council [sic] alleging that Ms. Snead failed to demand a Bill of Particulars in spite of telling him that she had done so; failed to provide him with a copy of new evidence which the prosecutor had produced; and failed to view a particular video tape which had been in her possession for thirty (30) or more days. *Id.,* Ex. 3. Mr. Furlow also alleged that Ms. Snead was misrepresenting him, that her conduct was

unprofessional, that it would be "bias and plain error for her to remain on the case", that he and Ms. Snead had "a conflict of interest due to the fact that she was representing [him] to her full ability and doesn't want to go to trial", and that "she tole [him] that she filed the motions". *Id.* The trial court denied Mr. Furlow's Motion on July 16, 2003, concluding "since [Mr. Furlow] did not hire Ms. Snead, he is not at liberty to dismiss her." *Id.*, Ex. 4.

Pursuant to a plea agreement, on July 24, 2003, Mr. Furlow pleaded no contest to attempted murder with firearm specification, having weapons while under disability, possession of crack cocaine, and failure to comply with an order/signal from a police officer. *Id.* Ex. 5. At the State's request, the Court dismissed the felonious assault charge as well as all of the firearm specifications except the one attached to the attempted murder charge. *Id.* The court found Mr. Furlow guilty of the charges to which he pleaded no contest. *Id.,* Ex. 6.

Following a sentencing hearing, the court issued, on July 29, 2003, its written Judgment Entry of Conviction and Sentence. *Id.* The court first considered the principles and purposes of sentencing contained in R.C. § 2929.11 and the sentencing factors contained in R.C. § 2929.12, as well as its finding that Mr. Furlow committed the worst form of attempted murder and failure to comply and posed the greatest likelihood of committing future crimes. *Id.* The court then sentenced Mr. Furlow to terms of incarceration of three (3) years on the firearm specification, prior to and consecutive with all other prison terms it imposed, ten (10) years on the charge of attempted murder, eleven (11) months on the charge of having weapons while under disability, eight (8) years on the charge of possession of crack cocaine, and five (5) years, consecutive with all other prison terms, on the charge of failure to comply, for a total prison term of eighteen (18) years. *Id.*

Mr. Furlow timely filed a *pro se* Notice of Appeal on August 9, 2003. *Id.,* Ex. 8. On

4

March 23, 2004, Mr. Furlow, through counsel, filed his brief raising the following three (3) assignments of error:

> I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING APPELLANT'S *PRO SE* MOTION TO DISMISS COUNSEL WITHOUT FURTHER INQUIRY INTO THE ATTORNEY-CLIENT RELATIONSHIP.
>
> **A. The trial court erred by not allowing an indigent defendant to substitute counsel based on the fact that the indigent defendant did not hire counsel.**
>
> **B. The trial court erred in overruling, without further factual inquiry, Mr. Furlow's Motion to Dismiss Counsel, when said timely motion raised serious allegations concerning the attorney-client relationship**.
>
> II. THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM TERM FOR THE VIOLATION OF 2929.331(B) BY DEEMING MR. FURLOW'S CONDUCT WAS THE WORST FORM OF THE OFFENSE AND WITHOUT CONSIDERING THE FACTORS OF R.C. 2929.12.
>
> III. MR. FURLOW'S PLEA OF NO CONTEST WAS NOT MADE VOLUNTARILY AND ACCORDINGLY MUST BE WITHDRAWN.

*Id.,* Ex. 9.

On September 30, 2004, the Second District Court of Appeals for Clark County, Ohio, overruled each of Mr. Furlow's assignments of error and affirmed the trial court's judgment. *Id.,* Exs. 11, 12; *State v. Furlow, supra*.

Mr. Furlow filed a *pro se* Notice of Appeal and a *pro se* Motion to File Delayed Appeal to the Ohio Supreme Court on February 25, 2005. *Id.,* Exs. 13, 14. On April 13, 2005, the Ohio Supreme Court denied Mr. Furlow's Motion to File Delayed Appeal and dismissed the matter.

*State v. Furlow,* 105 Ohio St.3d 1497 (2005)(table); Doc. 6*,* Exs. 15, 16.

While his Motion to File Delayed Appeal was pending in the Ohio Supreme Court, specifically on March 4, 2005, Mr. Furlow filed in the Second District Court of Appeals for Clark County, Ohio, an Application to Reopen Appeal Pursuant to App. 26 R. [sic]. *Id.*, Ex. 17. In support of that Application, Mr. Furlow argued that his appellate counsel's "performance was deficient for failing to present a proper argument against the lower court's enhancement which caused [him] to receive maximum and consecutive sentences." *Id.* In addition, relying on *Blakely v. Washington,* 542 U.S. 296 (2004), Mr. Furlow argued that his appellate counsel's "performance was deficient" because he failed to raise a *Blakely* challenge to the trial court's findings which it used to enhance his sentence. *Id.* On May 20, 2005, the state court of appeals denied Mr. Furlow's App. R. 26(B) Application to Reopen finding that it was untimely and that Mr. Furlow had offered no explanation why it was filed out of time. (Doc. 6, Ex. 18).

On March 20, 2006, Mr. Furlow filed a *pro se* Petition for Relief in Habeas Corpus in the Supreme Court of Ohio raising the following:

**GROUNDS FOR RELIEF** [sic]

**RELATOR'S SENTENCE IS VOID AB INITIO WHERE HE WAS NOT GIVEN NOTICE AND THE OPPORTUNITY TO BE HEARD AS TO THE ENHANCEMENT OF HIS PRESUMTIVE [sic] MAXIMUM/MINIMUM SENTENCE OF SIX (6) YEARS.**

*Id.*, Ex. 20. Mr. Furlow argued that his sentence was void because it violated *Blakely, supra,* and *Apprendi v. New Jersey,* 530 U.S. 486 (2000). *Id.* The Ohio Supreme Court *sua sponte* dismissed Mr. Furlow's Petition on May 10, 2006. (Doc. 6, Exs. 21, 22).

**Proceedings in this Court**

Mr. Furlow filed his Petition for Writ of Habeas Corpus in this Court on April 17, 2006, and his Amended Petition on June 15, 2006. (Docs. 1, 4). In his Petition, as amended, Mr. Furlow raises, verbatim, the following grounds for relief:

> **Ground one:** Denying Pro-Se motion to dismiss counsel.
>
> **Supporting FACTS:** The first court would not allow me to fire my attorney, the Court said since I did not hire the attorney, I connot [sic] fire the attorney. All Motions filed in my case were filed Pro Se. The trial court said my motion did not say anything about dismissing councel [sic] which is untrue.
>
> **Ground two:** Imposing Maximum sentence (B) deeming my conduct was the worst form of the offence [sic].
>
> **Supporting FACTS:** The sentence imposed was unconstitutional cause the court did not prove beyonda [sic] reasonable doubt that the defendant was guilty of every element of the crime and the judge sentenced defendant based solely on the fact and the court failed to prove that the defendants conduct was the worst form of the offense the court calime [sic] to that conclusion without any proof, victim admitted to provoking incedent [sic].
>
> **Ground three:** Plea was not made voluntarily.
>
> **Supporting FACTS:** Due to the fact that the trial court would not allow to dismiss my Attorney, and my attorney was'nt [sic] prepaired [sic] for trial nor did my attorney have any plan of going to trial and since, I wanted to go to trial, but not with the attorney that was repersentting [sic] me. I had no other choice but to plea [sic] no contest.
>
> **Ground four:** Violation of BLAKELY V. WASHINGTON and Apprendi V. NEW JERSEY.
>
> **Supporting FACTS:** The sentence in this case is unconstitutional cause the courts imposed the maximum sentence when the minimum sentence should have been imposed cause the court did not prove defendant was guilty of the enhancements defendant was sentence

7

> [sic] solely on the facts and not beyond a reasonable doubt. (U.S. V. BOOKER)

(Doc. 4).

**Standard of Review**

    **I. Antiterrorism and Effective Death Penalty Act of 1996**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") applies to all habeas cases filed after April 25, 1996. *Herbert v. Billy,* 160 F.3d 1131 (6th Cir. 1998), *citing, Lindh v. Murphy,* 521 U.S. 320 (1997). Since Mr. Furlow filed his Petition well after the AEDPA's effective date, the amendments to 28 U.S.C. §2254 embodied in the AEDPA are applicable to his Petition.

Title 28 U.S.C. §2254, as amended by the AEDPA, provides:

> ...
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254.

The AEDPA also provides that a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e). In addition, pursuant to the AEDPA, before a writ may issue on a claim that was evaluated by the state courts, the federal court must conclude that the state court's adjudication

8

of a question of law or mixed question of law and fact was "contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." 28 U.S.C. §2254(d)(1).

A state court's decision is contrary to the Supreme Court's clearly-established precedent if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law; or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case", "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407-08. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003); *Williams,* 529 U.S. at 407, 409. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Id.* at 410 (emphasis in original). In sum, Section 2254(d)(1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Id.* at 412 (Justice O'Connor, concurring).

A state court decision is not "contrary to" Supreme Court law simply because it does

9

not specifically cite Supreme Court cases. *Early v. Packer,* 537 U.S. 3 (2002). Indeed, "contrary to" does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Id.* at 8. The AEDPA prohibits the overturning of state decisions simply because the federal court believes that the state courts incorrectly denied the petitioner relief:

> By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded Section 2244(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts".

*Id.* at 366.

For the purposes of the AEDPA, the court reviews the last state court decision on the merits. *Howard v. Bouchard,* 405 F.3d 459, 469 (6th Cir. 2005), *cert. denied,* ___ U.S. ___, 126 S.Ct. 1032 (2006).

The AEDPA standard of review applies only to "any claim that was adjudicated on the merits in State court proceedings." *Danner v. Motley,* 448 F.3d 372, 376 (6th Cir. 2006). A state court's failure to articulate reasons to support its decision is not grounds for reversal under the AEDPA. *Williams v. Anderson,* 460 F.3d 789, 796 (6th Cir. 2006), *citing, Harris v. Stovall,* 212 F.3d 940 (6th Cir. 2000), *cert. denied,* 432 U.S. 947 (2001). Where the state court fails to adjudicate a claim on the merits, the habeas court conducts an independent review of a petitioner's claims. *Williams*, *supra.* That independent review, however, is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Williams, supra.*

10

## II. Procedural Default

The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also, Simpson v. Jones,* 238 F. 3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982).   Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F. 3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478 (1986);  *Engle v. Isaac*, 456 U.S. 107 (1982);  *Wainright*  433 U.S. at 87.

The Sixth Circuit Court of Appeals requires a four-part analysis when determining whether a habeas claim is barred  by procedural default.  *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001), *cert. denied,* 534 U.S. 1147 (2002).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>  . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture

11

> is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d at 138.

## Merits of the Petition

### Grounds one, two, three

Respondent has raised the defense of procedural default as to Mr. Furlow's first, second, and third Grounds. Mr. Furlow argues that those claims are not procedurally defaulted because he presented them on direct appeal to the state appellate court and because when it denied his motion for delayed appeal, the Ohio Supreme Court did not specifically cite a procedural rule for its denial of his motion.

Mr. Furlow indeed first raised the claims contained in Grounds one, two, and three, on direct appeal to the state court of appeals. As noted above, on September 30, 2004, the state appellate court rejected each of Mr. Furlow's assignments of error and affirmed the trial court's judgment. Mr. Furlow filed his Notice of Appeal and his Motion to File Delayed Appeal in the Ohio Supreme Court on February 25, 2004, some one hundred forty-eight (148) days after the appeals court entered judgment, both of which the Ohio Supreme Court denied.

Under the Rules of Practice of the Supreme Court of Ohio, to perfect an appeal from a court of appeals to the Ohio Supreme Court, in other than a certified conflict case, the appellant shall file a notice of appeal in the Supreme Court within 45 days from the entry of the judgment being appealed. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir.), *cert. denied,* 543 U.S. 989 (2004).

12

The Ohio Supreme Court Rules also require a motion for a delayed appeal to state, *inter alia,* adequate reasons for the delay. *Id.* The 45-day time limit on appeal to the Ohio Supreme Court is an adequate and independent state ground which can be relied upon to foreclose federal habeas review. *Id.* Lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, *pro se* status, and short time for legal research in prison do not establish cause to excuse this default. *Id.* The applicable Ohio Supreme Court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits. *Id.* Where a state court is entirely silent as to its reasons for denying requested relief, as when the Ohio Supreme Court denies leave to file a delayed appeal by form entry, the federal courts assume that the state court would have enforced any applicable procedural bar. *Id.*

In applying the *Maupin* factors to the facts of this case, this Court concludes that Mr. Furlow's Grounds one, two, and three are procedurally defaulted. First, there are procedural rules with which Mr. Furlow failed to comply, to wit: Ohio's procedural rule of filing a notice of appeal within forty-five (45) days of the appellate court's entry of judgment and Ohio's procedural rule which requires the showing of good cause in a motion for delayed appeal. Second, the Ohio Supreme Court denied Mr. Furlow's motion for delayed appeal which is a procedural ruling. In addition, because the Ohio Supreme Court was silent as to its reasons for denying Mr. Furlow's motion, this Court assumes that the Ohio Supreme Court was enforcing its procedural rules. Third, as noted above, the 45-day time limit on appeal to the Ohio Supreme Court is an adequate and independent state ground which can be relied upon to foreclose federal habeas review.

Mr. Furlow seems to suggest that there was "cause" for him to not follow the Ohio Supreme Court's procedural rules on the basis that he did not receive timely notice of the appellate

13

court's judgment. Specifically, Mr. Furlow claims that although the appellate court entered judgment on September 30, 2004, he did not receive notice of that judgment until December 20, 2004[2]. Even assuming that the 45-day clock did not start running until December 20, 2004, filing a notice of appeal on February 25, 2005, was outside the 45-day time limit for which the Ohio Supreme Court's rules provide. Mr. Furlow has not established "cause" for the procedural default of his Grounds one, two, and three.[3]

### Ground four

In his Ground four, Mr. Furlow alleges that the trial court erred when it sentenced him to the maximum sentence because the court did not prove that he was guilty of the enhancements. Mr. Furlow's position is that his sentence therefore violates *Blakely*, *supra, Apprendi, supra,* and *United States v. Booker,* 543 U.S. 220 (2005).

Mr. Furlow raised this Ground four claim in his Ground two with one difference—in support of Ground four in his current Petition, Mr. Furlow relies on United States Supreme Court precedent. In contrast, when Mr. Furlow first raised this sentencing claim on direct appeal, he argued his sentence violated Ohio state law. Indeed, he never raised the claim in his direct appeal as a federal constitutional claim. The first time Mr. Furlow suggested a federal constitutional claim with respect to his sentence was when he attempted to reopen his direct appeal. However, Mr. Furlow couched his sentencing claim as an ineffective assistance of appellate counsel claim and did not raise it as a separate, discrete claim.

---

[2] Mr. Furlow claims that he did not receive a copy of the appellate court's Opinion and Judgment until after he contacted the clerk of that court by letter dated December 2, 2004, and inquired as to the status of his appeal.

[3] Having reached this conclusion, the Court need not address the "prejudice" prong of the "cause and prejudice" test.

If a petitioner's claims in federal habeas corpus rest on different theories than those presented to the state courts, they are procedurally defaulted. *Lorraine v. Coyle,* 291 F.3d 416 (6th Cir. 2002), *cert. denied,* 538 U.S. 947 (2003); *Lott v. Coyle,* 261 F.3d 594, 607, 619 (6th Cir. 2001), *cert. denied sub nom., Lott v. Bagley,* 534 U.S. 1147 (2002)("relatedness" of claim will not save it).

At this juncture, the Court notes that the United States Supreme Court decided *Booker* on January 12, 2005, and *Blakely* on June 24, 2004, and that Mr. Furlow filed his notice of direct appeal on August 9, 2003, and his appellate brief on March 23, 2004. Mr. Furlow's notice and brief on direct appeal each pre-dated *Booker* and *Blakely* making it impossible for him to base any claim on either. However, the United States Supreme Court decided *Apprendi* on June 26, 2000, years before Mr. Furlow filed either his notice or his brief on direct appeal.

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. The *Apprendi* rule reflects two longstanding tenets of common-law criminal jurisprudence: that the "truth of every accusation" against a defendant "should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours," 4 W. Blackstone, Commentaries on the Laws of England 343 (1769), and that "an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law, and it is no accusation in reason." 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872). *Blakely,* 542 U.S. at 301. *Blakely* is an extension of *Apprendi*. *Blakely,* 542 U.S. at 301, ("This case requires us to apply the rule we expressed in *Apprendi* ..."), and *Booker* is an extension of *Blakely*. *Booker,* 543 U.S. at 244 ("*Blakely* applies to the [federal] Sentencing Guidelines").

15

Although the Supreme Court did not decide *Blakely* and *Booker* until after Mr. Furlow filed his notice of appeal and appellate brief on direct appeal, the Court decided *Apprendi,* the precedential foundation of both *Blakely* and *Booker* long before Mr. Furlow's direct appeal. Mr. Furlow could have raised his sentencing argument on direct appeal as a federal constitutional claim by relying on *Apprendi*. However, he failed to do so and his Ground four is procedurally defaulted.

**Conclusion**

It is therefore recommended that Petitioner Sylvanius O. Furlow's Petition for Writ of Habeas Corpus be dismissed with prejudice.

January 25, 2007.

*s/ Michael R. Merz*
Chief United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).